KATIE ADAMS, Appellee, v. WILLIAM B. SCHWARTZ, Appellant.—356 S. W. (2d) 597.

Western Section, Jackson.   September 22, 1960.

Petition for Certiorari Denied by Supreme Court March 10, 1961.

Henry Beaty, Jr., W. J. Ling, R. A. Mayhall and J. E. Madden, Memphis, for appellant.

Erich W. Merrill, Memphis, for appellee.

CARNEY, J. The defendant below, William B. Schwartz, purchased for $4,500 a series of promissory notes in the principal amount of $7,000 executed by complainant, Katie M. Adams. The Chancellor found that the defendant, Schwartz, was chargeable with knowledge that the execution and sale of said notes by the complainant, Katie Adams, was a money-raising transaction; that William B. Schwartz was not a holder in due course of said notes without notice and that the notes were usurious to the extent of the $2,500 discount. The Chancellor ordered said notes purged of the usury and found that the defendant, William B. Schwartz, had been repaid the full amount of his actual loan of $4,500 plus 6% interest and in addition had received the sum of $40.31 in cash which constituted usury. The Chancellor ordered

the sum of $40.31 repaid to the complainant and the trust deeds securing the notes satisfied and released of record. The defendant, Schwartz, excepted to the decree and has brought an appeal to this court.

The complainant, Katie Adams, is a colored woman with limited education and business background. In May, 1951, she was the owner of two vacant lots in Memphis, Tennessee, and was desirous of obtaining a house. The defendant, J. R. Ruffin, is a colored contractor who has also been interested in real estate transactions.

On May 26, 1951, the complainant, Katie M. Adams, signed a written contract prepared by the defendant, J. R. Ruffin, for the erection by Ruffin on one of her lots of a new house at a total cost of $6,950 cash. The terms of the contract were as follows: "J. R. Ruffin agrees to build a 6-room house for the sum mentioned above. Complete bath, single pine floor, sealed with insulation board or sheetrock. All work to be done in good workmanship like manner and according to plan. Balance of down payment to be paid while building."

The contract further recited the payment of $250.00 as earnest money by Katie M. Adams. Actually there were no plans and specifications drawn up but the plans were merely verbal between complainant and defendant Ruffin. The defendant, Ruffin, carried the complainant by a house in Memphis which he told the complainant he had built and that her house would be like that one.

On May 26, 1951, the complainant, Katie Adams, also executed, at the request of Ruffin, a series of promissory notes payable to bearer consisting of 60 notes of $50.00 each drawing interest at 6% from date and payable monthly and a balloon note in the amount of $4,000 pay-

able at the end of five years also bearing interest at 6% per annum. These notes were secured by a deed of trust on the lot on which the defendant, Ruffin, was to erect the house. These notes along with the trust were delivered by the complainant to the defendant, Ruffin, who in turn pledged them with one Harry Sauer to secure a loan totalling some $800.00 representing the advancement of cash from Sauer to Ruffin for the payment of labor costs on the complainant's house.

The defendant, Ruffin, entered immediately upon the construction of the house. In September, 1951, the house was nearly completed and the defendant, Ruffin, still owed approximately $3,500 to the furnishers of materials used in the construction of the complainant's house. In addition to the $250.00 earnest payment complainant had also piad $340.00 in cash to the defendant, Ruffin, receiving receipts from Ruffin but had never received any of her promissory notes.

The defendant, Ruffin, being in dire need of money set about to find a purchaser of the notes. One C. A. Tindall agreed to refinance the transaction at a total of $4,850 but insisted upon a new set of 61 notes being executed, all current and providing for the quarterly payment of interest on the $4,000 balloon note. The defendant, Ruffin, requested the complainant, Katie Adams, to go by the office of his attorney, Honorable William Ling, to sign the new notes. At this time Mr. Ling did not know about the existence of the first set of notes executed by complainant in May, 1951, but had prepared a new series of notes consisting of 60 notes of $50.00 each payable monthly and the balloon note of $4,000. Complainant, Katie Adams, refused to sign the new notes because

of the provision for the payment of interest quarterly on the balloon note.

Thereupon Mr. Ling suggested that probably another client, the defendant, William B. Schwartz, might buy the notes without requiring the quarterly payment of interest.

Accordingly, Mr. Ling communicated with Mr. Schwartz; Mr. Schwartz went out and looked the real estate over and agreed to buy the complainants notes for $4,500. The complainant was recalled to Mr. Ling's office where on September 18, 1951, she signed a deed of trust on her house and lot securing an indebtedness in the amount of $7,000 represented by 60 promissory notes in the amount of $50.00 each payable monthly beginning October 18, 1951, and bearing interest from date and a balloon note of $4,000 due on or before September 18, 1956, also drawing interest at 6% from date.

On September 20, 1951, Mr. Schwartz executed his check in the amount of $4,500 payable to the Union Planters Title Guaranty Company of Memphis. The $4,500 was disbursed by Mr. Ling in the amounts and to the various persons as shown by his settlement sheet as follows:

| | | |
|---|---|---|
| "Title premium | | $55.00 |
| Abstract Bill (Memphis Abstract Co.) | | 50.00 |
| Recording Trust Deed: | | |
| Tax | $5.50 | |
| Recording | 3.75 | |
| | $9.25 | 9.25 |
| Attorney fee | | 50.00 |
| Closing fee | | 15.00 |

| | |
|---|---:|
| Notary fee | 2.00 |
| Release | 2.50 |
| 1949 County taxes | 6.10 |
| 1951 City taxes | 5.45 |
| Krag Plumbing Co. | 850.00 |
| John A. Denies Sons Co. | 233.05 |
| Scott Electric Co. | 236.10 |
| North Memphis Lumber Co. | 1268.69 |
| North Memphis Hardware Co. | 4.39 |
| North Memphis Hardware Co. Balance 1024 Dawes St. | 46.76 |
| North Memphis Hardware Co. Balance 679 Mariana | 243.78 |
| D. Sauer & Company | 806.96 |
| Quality Hardware & Variety Co. | 57.83 |
| Quality Hardware & Variety Co. | 54.57 |
| Survey | 20.00 |
| M. C. Joyner, note #1, Mariah Bradley | 40.00 |
| Fund deposit | 100.00 |
| J. R. Ruffin, agent | 342.47 |
| | $4500.00'' |

On September 25, 1951, the deed of trust was filed for registration in the Register's office of Shelby County and the notes were delivered to Mr. Schwartz on that date.

On October 14, 1951, the appellant, Mr. Schwartz, wrote to Katie M. Adams, as follows:

"Memphis, Tennessee.
"October 14, 1951.

"Katie M. Adams
"1024 Texas Street
"Memphis, Tennessee.

"Dear Madam;—

"This is written to advise you that I have placed the notes I purchased on your property located at 1847 Farrington Street in the hands of the National Bank of Commerce, address Monroe Ave. corner of Second St. for collection. The notice they sent you of the first note due October 18th was returned to them as the house is vacant. Please arrange to secure your note from the National Bank of Commerce when due on October 18th. There will be a collection charge of 35¢ per note by the National Bank of Commerce. I have given them 15 notes which will be through the balance of 1951 and 12 notes during 1952. The collection charge is payable : in advance and the amount will be $5.25.

"Mr. Wm. J. Ling requested that I drive out to see the house at 1847 Farrington St. which I did. The under sink cabinet, screens and a piece of wall paper has not been put in as yet. However Mr. Ling will hold sufficient funds for this purpose until same is done. I have talked to J. R. Ruffin about this matter and he advises same will be done this coming week without fail.

"If there is anything you wish to speak to me about this loan, or the property put down the following phone number 7-2357-J and call me at anytime I can be of service.

> "Very truly yours
> "/s/ Wm. B. Schwartz
> "Wm. B. Schwartz

"Address #2095 Poplar Ave. Apt. 55, Memphis 4, Tennessee."

The complainant, Katie Adams, paid the monthly notes regularly as they became due and payable. She insisted that the defendant, Ruffin, did not build the house as they agreed upon and had not completed the house even at the time of the trial. On one occasion Mr. Schwartz furnished the complainant some screens for her house without cost to her.

After the complainant had paid the 60 monthly notes of $50.00 each dated September 18, 1951, she refinanced the $4,000 balloon note by executing and delivering to the defendant, Schwartz, 106 notes in the amount of $50.00 each dated September 18, 1956, and one note in the amount of $53.00. After complainant had paid some 14 or 15 of the new monthly notes executed by her on September 18, 1956, she filed her suit in the present cause against the defendants, William B. Schwartz, J. R. Ruffin, and Mr. Ling, seeking to purge the transaction of usury. The bill was dismissed as to the defendants, Ruffin and Ling, and no appeal has been prosecuted by the complainant to this action of the court.

The appellant, William B. Schwartz, has filed six assignments of error in this court but it is unnecessary to discuss them separately. Actually they raise only the one determinative question: Was the transaction whereby the appellant, Schwartz, became the owner of the complainant's notes a bona fide purchase by Schwartz of her notes or was the transaction designated a purchase but in reality a loan of money?

T. C. A. Section 39-4601 defines usury as follows:

"Usury prohibited.—No person shall receive, by way of compensation for the use of money, more than at the rate of six dollars ($6.00) for the use of one hundred dollars ($100) for one (1) year, except as otherwise provided. (Code 1858, sec. 4821 (deriv. Acts 1835-1836, ch. 50, sec. 6); Shan., sec. 6732; mod. Code 1932, sec. 11131.)"

█ If the contract is in truth and fact a loan of money at usurious rates, it matters not what devices may be resorted to for the purpose of concealing its true character, the law will strip from it these devices, and adjudge it by what it is in fact, rather than by what it may in its terms appear to be. Mallory v. Columbia Mortgage & Trust Co., (1923), 150 Tenn. 219, 263 S. W. 68.

█ The appellant, Schwartz, contends the transaction was not a loan but that he purchased these notes from the owner, J. R. Ruffin, through his attorney, William J. Ling; that he was a stranger to both Katie M. Adams and defendant, J. R. Ruffin, and had no negotiations with them whatsoever.

The admitted facts in the case do not support the appellant's contention. The series of notes executed by complainant, Katie Adams, in May, 1951, and delivered by her to Ruffin in consideration of Ruffin's contract to build her a house were never shown or offered to the defendant, Schwartz, for sale and purchase; as far as the record shows he never knew of the existence of such notes. The defendant, Ruffin, testified that the first series of notes were offered to one or more people for sale without success and that it became necessary in order to raise the money to pay off the liens against the complain-

ant's home for the complainant to execute and sell at a discount a new and current series of notes.

The action of Schwartz in leaving a check for $4,500 with his attorney, Mr. Ling, with the intention that Mr. Ling use the proceeds thereof not to pay any holder or owner of said notes but to pay off existing liens on the complainant's property convinces us overwhelmingly that the real intention of Mr. Schwartz was to advance the sum of $4,500 and to receive as compensation therefor not only the 6% per annum allowed by statute but an additional profit in the form of a discount of $2,500. His letter written to the complainant in October, 1951, in which he refers to the transaction as a loan fortifies our finding and the finding by the Chancellor that Mr. Schwartz was chargeable with knowledge that the notes in controversy were executed and discounted by the complainant and Ruffin for the purpose of raising money.

The situation is not altered any by the fact that the appellant, Schwartz, dealt only with Mr. Ling. Mr. Ling was acting as attorney and/or agent of all of the parties; Mr. Schwartz, Union Planters Title Guaranty Co., J. R. Ruffin and the complainant, Katie M. Adams. Mr. Ling, of course, knew that this was a money raising transaction and that the new notes were being executed by the complainant for the purpose of sale at a discount in order to raise $4,500 which was to be used for her benefit and also the benefit of Ruffin in paying the debts of Ruffin and in clearing the liens and encumbrances against the complainant's property. Not only was this knowledge on the part of Ling imputable to the defendant, Schwartz, but we find also that the appellant, Schwartz, had actual knowledge of the purposes for which these notes in controversy were being executed and discounted.

██ ''As we understand the law of this state, on the subject of usury, no scheme or device to avoid the application of statutes on that subject, however ingenious or intricate same may be, will permit anyone guilty of participating in a usurious transaction to escape its consequences, when the facts are made to appear; and consent or cooperation of the one paying the usurious interest is immaterial. Also while it is permissible for anyone to buy at a discount negotiable paper which has already been issued, and in the capacity of an innocent purchaser for value and without notice, collect the full amount of such negotiable paper, even though there was usury in its inception (Bradshaw v. Van Valkenburg, 97 Tenn. 316, 37 S. W. 88); nevertheless, for this rule to apply, such paper must have been previously in the hands of some other holder from or through whom same is acquired; or, at least, such purchaser must have reasonable grounds for believing that such former holder existed.'' Providence A. M. E. Church v. Sauer, 45 Tenn. App. 287, 323 S. W. (2d) 6, 13. See also Wetmore v. Brien & Bradley, 40 Tenn. 723.

Hence, we must respectfully overrule all of the assignments of error of the appellant, Schwartz, and affirm the action of the Chancellor.

██ The appellee has filed a motion to strike the bill of exceptions because not timely filed. On June 8, 1959, the Chancellor entered an interlocutory decree adjudging the transaction to be usurious to the extent of $2,500 and ordering an accounting to determine the exact amount due and owing between the parties. An accounting was had by the Clerk & Master upon reference and on November 6, 1959, the Chancellor entered a final decree in this cause adjudging the defendant, William B. Schwartz,

indebted to the complainant, Katie M. Adams, in the amount of $40.31 for excess usury collected and ordering deeds of trust on complainant's property released. The defendant, William B. Schwartz, duly excepted and prayed an appeal from this final decree and had approved and filed his bill of exceptions within ninety days from the date of said final decree as provided by T. C. A. Section 27-111. It is the contention of appellee that the ninety-day period began running on June 8, 1959, the date of entry of the interlocutory decree. We think this contention is without merit and the motion is denied.

A decree will be entered affirming the action of the Chancellor and remanding the cause to the Chancery Court for the enforcement of the decree and the collection of the judgment. The costs are taxed against the appellant, William B. Schwartz.

Avery, P. J. (W. D.) and Bejach, J., concur.